Tara J. Schleicher, WSBA #26884
Jason M. Ayres, WSBA #39141
Foster Garvey P.C.
121 SW Morrison Street, Ste. 1100
Portland, Oregon 97204-3141
Telephone: (503) 228-3939
Facsimile: (503) 226-0259
tara.schleicher@foster.com
jason.ayres@foster.com

## UNITED STATES BANKRUPTCY COURT

### FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re | Case No. 20-00044-WLH11 |
| CLAAR CELLARS, LLC, | **HOMESTREET BANK'S OBJECTION TO MOTION FOR ORDER: (a) AUTHORIZING EMERGENCY & INTERIM USE OF CASH COLLATERAL; AND (b) AUTHORIZING FINAL USE OF CASH COLLATERAL** |
| Debtor. | |

HomeStreet Bank ("HomeStreet") submits this objection to the Debtor's Motion for Order: (a) Authorizing Emergency & Interim Use of Cash Collateral and (b) Authorizing Final Use of Cash Collateral (the "Motion"). The Debtor's Motion belies its historical losses for the last four (4) years in the hundreds of thousands of dollars and contradicts the testimony and evidence presented on December 6, 2019 (about a month before the Petition Date) and the findings of the Franklin County Superior Court when it appointed a receiver for the Debtor. The Debtor provides no financials or historical records which support its budget, projected income or the requested use of cash in its Motion. The Debtor also has not proposed actual adequate protection for HomeStreet Bank. It instead simply states that HomeStreet would retain its liens it had on the Petition Date and erroneously refers to that already existing right under the Code as a "Replacement Lien," which it clearly is not. The Debtor asks this Court to

FOSTER GARVEY P.C.
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464 3939

FG:10744918.1

20-00044-WLH11    Doc 46    Filed 01/27/20    Entered 01/27/20 13:02:53    Pg 1 of 25

1  rely on future proceeds, which it currently does not have in place and has no historical basis to

2  support.  Additionally, the Motion should be denied because (i) it overreaches well beyond the

3  provisions of the Bankruptcy Code and treats this case and the RC Farms, LLC ("RC Farms")

4  chapter 11 bankruptcy proceeding as substantively consolidated when they are not and cannot

5  be consolidated without a substantial showing and an order of this Court, and (ii) it violates the

6  priorities of the Bankruptcy Code by providing for the payment of prepetition expenses.

7  Finally, the Debtor and RC Farms have a debtor/creditor relationship, which dictates that they

8  have separate counsel instead of the same three (3) lawyers for both cases.  HomeStreet relies

9  upon the following points and authorities, the Declaration of Mark Johnson ("Johnson Dec.")

10  and the Declaration of Jason M. Ayres ("Ayres Dec.") in support of this objection to the

11  Debtor's Motion.

12  <u>BACKGROUND FACTS</u>

13  HomeStreet made two loans to the Debtor and an additional loan to RC Farms each of

14  which the Debtor is attempting to address in its Motion.  Specifically, the Debtor executed and

15  delivered to HomeStreet a Promissory Note dated August 22, 2016 in the principal amount of

16  $500,000.00 and interest at a variable rate with an initial rate of 5% payable upon demand, but

17  if no demand, then on or before July 1, 2017 (the "Claar Note") for the purposes of obtaining a

18  revolving line of credit.  Johnson Dec., ¶ 3.  The Claar Note is secured by a Mortgage dated

19  August 22, 2016 executed by RC Farms, L.L.C. ("RC Farms") (the "Mortgage") against the real

20  property commonly known as 1340 Glenwood Road, Pasco, Washington 99301 with real

21  property tax identification number 126-390-140 (the "First Property").  *Id*.  The Debtor

22  additionally executed an Agricultural Security Agreement in favor of HomeStreet on August

23  22, 2016 (the "ASA"), by which the Debtor granted a security interest in all inventory, chattel

24  paper, accounts, equipment, general intangibles, crops, crop income, farm products and farm

25  equipment (the "Personal Property").  *Id*.  On or about August 25, 2016, HomeStreet filed a

26  UCC Financing Statement with the Washington Secretary of State's office listing the personal

HOMESTREET BANK'S OBJECTION TO MOTION FOR ORDER:
(A) AUTHORIZING EMERGENCY & INTERIM USE OF CASH
COLLATERAL; AND (B) AUTHORIZING FINAL USE OF CASH
COLLATERAL - 2

FOSTER GARVEY P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

FG:10744918.1

20-00044-WLH11    Doc 46    Filed 01/27/20    Entered 01/27/20 13:02:53    Pg 2 of 25

property subject to the ASA and Claar Cellars as the debtor (the "UCC"). *Id.*

On or about July 28, 2017, the Debtor executed an amendment and restatement of the Claar Note in the amount of $500,000.00 for a revolving line of credit with variable interest at the initial rate of 5.75%, which was payable upon demand, but if no demand was made, on or before July 1, 2018 (the "Amended Claar Note"). Johnson Dec., ¶ 4. To secure the Debtor's obligations under the Amended Claar Note, the Debtor executed an amendment and restatement of the ASA on or about July 28, 2017 (the "Amended ASA"), which in addition to the original collateral under the ASA, granted HomeStreet a security interest in Claar Cellars' commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money and oil, gas or other minerals before extraction (collectively, the "Claar Personal Property"). *Id.*

The Debtor executed an additional Promissory Note dated July 12, 2018 in favor of HomeStreet in the amount of $75,000.00 with interest at the stated rate of 5% and a maturity date of July 12, 2023 (the "Second Claar Note"). Johnson Dec., ¶ 5. The Debtor executed an Agricultural Security Agreement dated July 12, 2018 (the "Second Claar ASA") to secure the Debtor's performance under the Second Claar Note, which granted an additional security interest to HomeStreet in the Claar Personal Property. *Id.*

Through several Change in Terms Agreements, ultimately, the total commitment amount under the Amended Claar Note was increased to $600,000.00. Johnson Dec., ¶ 6. Pursuant to a Change in Terms Agreement dated June 19, 2019, the maturity date on the Amended Claar Note was extended to September 1, 2019. *Id.*

RC Farms executed and delivered to HomeStreet a Promissory Note dated March 12, 2018 in the principal amount of $1,150,000.00 and interest at a variable interest rate with an initial rate of 5.71% and a maturity date of April 1, 2028 (the "RC Farms Note"). Johnson Dec., ¶ 7. The RC Farms Note is secured by a mortgage dated March 12, 2018 executed by RC Farms and the Whitelatch Trust (the "RC Mortgage") against the First Property and an

HOMESTREET BANK'S OBJECTION TO MOTION FOR ORDER:
(A) AUTHORIZING EMERGENCY & INTERIM USE OF CASH
COLLATERAL; AND (B) AUTHORIZING FINAL USE OF CASH
COLLATERAL - 3

FOSTER GARVEY P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

FG:10744918.1

20-00044-WLH11    Doc 46    Filed 01/27/20    Entered 01/27/20 13:02:53    Pg 3 of 25

additional parcel of real property located at the commonly known address of 1340 Glenwood Road, Pasco, Washington 99301 with real property tax identification number 126-390-110 (the "Second Property"). *Id*. The First Property and the Second Property are collectively referred to as the "Property". *Id*. The RC Mortgage was recorded in the real property records against the Property on March 19, 2018. *Id*. The Mortgage and the RC Mortgage are collectively referred to as the "Mortgages." *Id*.

HomeStreet accelerated the balance due under the Amended Claar Note, Second Claar Note and RC Farms Note by notice dated October 24, 2019 based upon numerous events of default including the Debtor's failure to pay in full the Amended Claar Note by its maturity date and the failure to cure payment defaults as of October 14, 2019 as demanded in HomeStreet's letter to the Debtor dated September 30, 2019. Johnson Dec., ¶ 8. To date, the Debtor has failed to cure the defaults. *Id*.

On November 7, 2019, HomeStreet filed a complaint against the Debtor, among other defendants, in Franklin County Superior Court for the State of Washington (the "State Court"), Case No. 19-251223-11, for replevin, breach of contract and appointment of general receiver (the "State Court Case"). Johnson Dec., ¶ 9. On December 6, 2019, the State Court held a hearing on the appointment of a receiver. *Id*. At the hearing, HomeStreet introduced and the State Court received into evidence certain projections that the Debtor provided to HomeStreet in May of 2019 (the "Claar Projections"). Johnson Dec., ¶ 10, Exhibit 2. The Claar Projections projected a loss of ($14,265) in 2018. *Id*. Yet, the Debtor's tax returns for 2018 indicated the losses were actually ($379,039). *Id*. The Claar Projections projected a profit of $72,191.00 for 2019, or $47,655 through August 31, 2019. *Id*. However, as of September 2, 2019, the company actually reported a loss of ($48,217) for a (shortfall) from projections of ($97,872). *Id*.

HomeStreet prepared a cash flow analysis from Debtor's tax returns from 2016, 2017 and 2018. Johnson Dec., ¶ 11, Exhibit 3. A review of the Profit & Loss statements indicates

HOMESTREET BANK'S OBJECTION TO MOTION FOR ORDER:
(A) AUTHORIZING EMERGENCY & INTERIM USE OF CASH
COLLATERAL; AND (B) AUTHORIZING FINAL USE OF CASH
COLLATERAL - 4

FOSTER GARVEY P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

FG:10744918.1

20-00044-WLH11    Doc 46    Filed 01/27/20    Entered 01/27/20 13:02:53    Pg 4 of 25

1  P&L cash flow of $163,575 in 2016, (negative) P&L cash flow of ($1,326) in 2017 and
2  (negative) P&L cash flow of ($236,309) in 2018. *Id*. When working capital is factored into
3  this analysis, including changes in accounts receivable, inventory and accounts payable, the
4  Debtor had (negative) cash flow of ($156,430) for 2016, (negative) cash flow of ($225,933) for
5  2017 and (negative) cash flow of ($128,415) for 2018. *Id*. HomeStreet then factored in the
6  Debtor's debt service to this analysis. *Id*. Once debt service was factored in, the analysis
7  indicates that the Debtor had total cash deficits of ($289,295) in 2016, ($323,575) in 2017 and
8  ($249,645) in 2018. *Id*.

9      HomeStreet additionally introduced and the State Court received into evidence financial
10  statements and a borrowing base certificate prepared by the Debtor and provided to HomeStreet
11  in September of 2019. Johnson Dec. ¶ 13, Exhibits 5, 6 and 7. The actual sales of the Debtor
12  as of September 2, 2019 were $395,156, which is less than the Claar Projections by $427,929
13  (52%). *Id*. Further, when comparing the borrowing base certificate and the balance sheet,
14  there is a decrease in inventory of $739,597, with no corresponding increase in cash or
15  accounts receivable. *Id*. Although the financials show this significant decrease in inventory,
16  HomeStreet has not received a payment from the Debtor since August of 2019. *Id*.

17      Robert C. Whitelatch additionally testified at the State Court hearing on December 6,
18  2019. Ayres Dec., ¶ 3.[1] He specifically testified that the Debtor and RC Farms intended to
19  market and sell all personal and real property collectively as a whole in order to pay debts since
20  the combined businesses are operating at a loss. *Id*. At no point during Mr. Whitelatch's
21  testimony did he state that the businesses could or intended to obtain financing to reorganize or
22  continue to operate. *Id*.

23      Mr. Whitelatch testified that the Debtor and RC Farms are incurring losses and that he
24  was selling inventory and using the funds to operate the businesses at a loss. Ayres Dec., ¶ 4.
25  Mr. Whitelatch further testified that the cash flow of the Debtor and RC Farms is insufficient to

26  _____
[1] HomeStreet is in the process of getting a transcript of the State Court receivership hearing.

HOMESTREET BANK'S OBJECTION TO MOTION FOR ORDER:
(A) AUTHORIZING EMERGENCY & INTERIM USE OF CASH
COLLATERAL; AND (B) AUTHORIZING FINAL USE OF CASH
COLLATERAL - 5

FOSTER GARVEY P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

FG:10744918.1

pay their debts. *Id*. When asked what he was doing to change the accelerating losses, Mr. Whitelatch stated "nothing terribly successful." *Id*. In fact, Mr. Whitelatch described the Eastern Washington wine market as oversaturated resulting in low prices, unsold inventory and difficult market conditions. *Id*.

Mr. Whitelatch was asked about inventory levels for the Debtor and RC Farms and he testified that he does not know what the inventory levels are. Ayres Dec., ¶ 5. In terms of monitoring inventory levels, Mr. Whitelatch testified that he plugs numbers into QuickBooks but he does not really know or understand what the numbers signify. *Id*.

Mr. Whitelatch was shown the cash flow analysis of the Debtor and RC Farms indicating negative cash flow based on a summary of income tax returns. Ayres Dec., ¶ 6. In response, he testified that he does not believe his tax returns accurately reflect cash flow even though he signed the returns under penalty of perjury. *Id*. Overall, Mr. Whitelatch testified that he was doing everything he could do but he did not know what else could be done to prevent further ongoing losses. Ayres Dec., ¶ 7. For these reasons, Mr. Whitelatch testified that the only way to pay the debts would be through the sale of property. *Id*.

On December 23, 2019, the State Court entered an order appointing Critical Point Advisors, LLC (the "Receiver") a custodial receiver for Debtor, RC Farms and the Whitelatch Trust (the "Order Appointing Receiver"). Johnson Dec., ¶ 9, Exhibit 1. The Order Appointing Receiver includes finding of fact confirming the validity of the applicable loan documents and amounts due and owing. *Id*. The Order Appointing Receiver additionally contains findings of fact that the Debtor's and RC Farm's cash deficits and costs from 2016 to 2018 were escalating, based upon their tax returns for those years, that the losses were continuing to increase for 2019 based on financial statements provided by the Debtor and RC Farms to HomeStreet in 2019 and that the inventory levels decreased by $739,597 between September 2, 2019 and September 28, 2019 without a commensurate increase in cash or accounts receivable and without payment to HomeStreet. *Id*.

HOMESTREET BANK'S OBJECTION TO MOTION FOR ORDER:
(A) AUTHORIZING EMERGENCY & INTERIM USE OF CASH
COLLATERAL; AND (B) AUTHORIZING FINAL USE OF CASH
COLLATERAL - 6

FOSTER GARVEY P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

FG:10744918.1

20-00044-WLH11    Doc 46    Filed 01/27/20    Entered 01/27/20 13:02:53    Pg 6 of 25

The Order Appointing Receiver also contains conclusions of law, which found that the evidence presented supported a finding that the revenue-producing potential of the Claar Personal Property and HomeStreet's collateral is impaired and that remedies available to HomeStreet are inadequate. *Id.* The State Court further found that the appointment of a receiver is necessary to manage and operate the Claar Personal Property as well as RC Farms personal property and real property owned by RC Farms as well as the Whitelatch Trust, collect the rents, maintain, preserve and protect all personal property and real property pending the sheriff's foreclosure sale or a potential sale prior to foreclosure by the receiver, and to sell the Claar personal property pending resolution of the replevin and other claims. *Id.*

As of the petition date, there was a balance due under the Amended Claar Note of $670,696.29, consisting of a principal balance of $600,000.00, accrued interest of $70,527.54, late charges of $168.75, plus HomeStreet's expenses, fees and attorneys' fees and costs; a balance due under the Second Claar Note of $63,504.41, consisting of a principal balance of $60,282.05, accrued interest of $2,938.76, late charges of $283.60, plus HomeStreet's expenses, fees and attorneys' fees and costs; and a balance due under the RC Farms Note of $1,186,833.38, consisting of a principal balance of $1,110,409.53, accrued interest of $63,026.75, late charges of $5,672.10, fees of $7,725.00, plus HomeStreet's expenses, fees and attorneys' fees and costs. Johnson Dec., ¶ 14. As of the petition date, HomeStreet's attorneys' fees and costs additionally totaled $33,284.67. *Id.*

<u>DISCUSSION</u>

Section 363(e) of the Bankruptcy Code prohibits use of cash collateral or requires the court to condition such use by requiring the Debtor to provide adequate protection. Section 361 addresses adequate protection and states that "[w]hen adequate protection is required under section …363…of an interest of an entity in property, such adequate protection may be provided by": (1) making cash payments to the extent of the decrease in the value of the secured creditor's interest in the property; (2) granting a replacement lien on **other** property to

HOMESTREET BANK'S OBJECTION TO MOTION FOR ORDER:
(A) AUTHORIZING EMERGENCY & INTERIM USE OF CASH
COLLATERAL; AND (B) AUTHORIZING FINAL USE OF CASH
COLLATERAL - 7

FOSTER GARVEY P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

FG:10744918.1

20-00044-WLH11    Doc 46    Filed 01/27/20    Entered 01/27/20 13:02:53    Pg 7 of 25

the extent of the decrease in the value of the secured creditor's interest in the property; or (3) "granting such other relief… as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property." (emphasis added). Furthermore, pursuant to 11 U.S.C. §363(p), the Debtor has the burden of proof on the issue of adequate protection.

Case law provides that the standard to be used for determining whether to allow the use of cash collateral includes the following:

(1) The court must establish the value of the secured creditor's interest;

(2) The court must identify risk to the secured creditor's value resulting from the debtor's request for use of cash collateral; and

(3) The court must determine whether the debtor's adequate protection proposal protects value as nearly as possible against risks to that value consistent with the concept of indubitable equivalence. *In re Negus-Sons, Inc*., 428 B.R. 511, 515 (Bankr. D. Neb. 2009) *citing Martin v. United States* (*In re Martin*), 761 F.2d 472, 476–77 (8th Cir.1985).

1.    The Debtor is operating at a continued loss and cannot meet its budget.

Mr. Whitelatch testified at the receivership hearing that there is no possibility of a reorganization by the Debtor. Indeed, he specifically testified that the Debtor is operating at a loss, it will continue to operate at a loss and the only option is a complete sale of assets. Accordingly, the Debtor has already admitted that there is no reasonable possibility of a reorganization.

This is because of the recurring losses and the Debtor's failure to meet its own projections (which still indicated losses). As described above, those projections projected a loss of ($14,265) in 2018, which was actually ($379,039), where is $364,774 more in **losses** than projected. The projections then projected a profit of $72,191.00 for 2019 with profits of $47,655 through August 31, 2019, yet as of September 2, 2019, there were losses of ($48,217) for a shortfall from projections of ($97,872). Johnson Dec., Exhibits 2 and 3. This can be attributed in part to the actual sales by the Debtor which totaled $395,156 as of September 2,

HOMESTREET BANK'S OBJECTION TO MOTION FOR ORDER:
(A) AUTHORIZING EMERGENCY & INTERIM USE OF CASH
COLLATERAL; AND (B) AUTHORIZING FINAL USE OF CASH
COLLATERAL - 8

FOSTER GARVEY P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

FG:10744918.1

20-00044-WLH11    Doc 46    Filed 01/27/20    Entered 01/27/20 13:02:53    Pg 8 of 25

2019, which is considerably less than the Claar Projections by $427,929 (**52% less**).  *Id*
Exhibits 2 and 5. The only truly consistent aspect of the Debtor's projections is that they are
historically extremely inaccurate and overstate any results the Debtor could obtain.

As indicated above, the cash flow analysis from Debtor's tax returns from 2016, 2017
and 2018 indicate negative cash flow on several levels. Johnson Dec., Exh. 3. First, a review of
the Profit & Loss statements indicates P&L cash flow of $163,575 in 2016, (negative) P&L
cash flow of ($1,326) in 2017 and (negative) P&L cash flow of ($236,309) in 2018.  *Id.* When
working capital was factored into this analysis to account for changes in accounts receivable,
inventory and accounts payable, the Debtor had (negative) cash flow of ($156,430) for 2016,
(negative) cash flow of ($225,933) for 2017 and (negative) cash flow of ($128,415) for 2018.
*Id.* Once debt service was also factored in, the Debtor had total cash deficits of ($289,295) in
2016, ($323,575) in 2017 and ($249,645) in 2018 – a total cash deficit of **($862,515)** over that
three year period of time. *Id.*

There are also significant concerns over missing inventory from the financial records,
which the Debtor could not explain at the receivership hearing.  The Debtor's financial records
show a decrease in inventory of $739,597 over the month of September 2019, with no
corresponding increase in cash or accounts receivable. Johnson Dec., Exhibits 4, 6 and 7.
Moreover, the Debtor's representative testified in State Court that he does not know what the
inventory levels are.  Ayres Dec., ¶ 5. Rather, he plugs numbers into QuickBooks without
understanding what the numbers signify. *Id.* What we do know, is that the inventory levels
listed in the Debtor's submissions are virtually identical to prior lists provided by the Debtor
from January to September of 2019.  All of this raises serious questions over the actual
inventory on hand and value.  In order to obtain a true value of the inventory, the Bank requires
an inspection and appraisal of inventory.

Despite these historical records and admissions from the Debtor in State Court that it
cannot operate without incurring losses, the Debtor now presents a budget showing positive net

HOMESTREET BANK'S OBJECTION TO MOTION FOR ORDER:
(A) AUTHORIZING EMERGENCY & INTERIM USE OF CASH
COLLATERAL; AND (B) AUTHORIZING FINAL USE OF CASH
COLLATERAL - 9

FOSTER GARVEY P.C.
*eighteenth floor*
*1 1 9 1   s e c o n d   a v e n u e*
*s e a t t l e ,   w a s h i n g t o n   9 8 1 0 1 - 2 9 3 9*
*2 0 6   4 6 4   3 9 3 9*

FG:10744918.1

20-00044-WLH11    Doc 46    Filed 01/27/20    Entered 01/27/20 13:02:53    Pg 9 of 25

income and profits.  This is not realistic.  First, the sales projected in the budget are not supported by the historical sales of the Debtor or the current market.  Indeed, the Debtor testified at the receivership hearing that the market is oversaturated in Eastern Washington. Ayres Dec., ¶ 4. This is again confirmed by the Debtor's financials which indicate actual sales as of September 2, 2019, which were $427,929 below the Debtor's own projections. Johnson Dec., ¶ 13. Consequently, the revenue projections are simply unrealistic and unsupported by the last four years of results and current market conditions.

The Debtor's budget also fails to include certain expenses and improperly includes others.  The budget does not have a line item for US Trustee fees, which must be added as an expense.  The budget improperly includes legal and accounting fees as monthly payments which are professional fees/administrative expenses that cannot be paid on a monthly basis. 11 U.S.C. § § 327(a) and 330. There is also a general line item for "draws" of $4,500 per month that appears to be for prepetition work, in part, and is higher than paid prepetition.  The budget also calls for payment to RC Farms for "vintage fruit" of $156,000, which is actually a **prepetition obligation** for grapes already delivered by RC Farms prior to the petition date. These amounts cannot be made under the Bankruptcy Code because they are on account of prepetition amounts owed.  Therefore, this additional line item must be removed.  Courts cannot alter the balance struck by the Bankruptcy Code's priority provisions, not even in 'rare cases.' *Czyzewski v. Jevic Holding Corp.*, 137 S.G. 973, 987 (2017) (bankruptcy courts may not approve a structured dismissal of a chapter 11 case that provides for distributions that do not follow the Bankruptcy Code's ordinary priority rules without the affected creditors' consent); *In re: Braniff Airways, Inc.*, 700 F2d 935, 939-40 (5th Cir. 1983) ("debtor and bankruptcy court should not be able to short circuit the requirements of chapter 11 for confirmation of a reorganization plan by establishing the terms of the plan *sub rosa* in connection with [a motion under § 363].")

The interim budget does not include any debt service or adequate protection payments.

HOMESTREET BANK'S OBJECTION TO MOTION FOR ORDER:
(A) AUTHORIZING EMERGENCY & INTERIM USE OF CASH
COLLATERAL; AND (B) AUTHORIZING FINAL USE OF CASH
COLLATERAL - 10

FOSTER GARVEY P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

FG-10744918.1

20-00044-WLH11    Doc 46    Filed 01/27/20    Entered 01/27/20 13:02:53    Pg 10 of 25

However, it is important to note that if the Debtor were to account for debt service, the budget would be even more problematic.

Overall, the Debtor has consistently shown an inability to meet its projections and has failed to come close to doing so. Taking into account the Debtor's unrealistic revenue projections, historical losses, and current market conditions, the Debtor will undoubtedly continue to operate at a loss. Simply put, the budget is not feasible. This is precisely why the Debtor testified at the receivership hearing that a sale of the overall operations is the only viable alternative. Based on the financial status of the Debtor and its inability to meet its budget, this Court should deny use of cash collateral.

2.      The Debtor improperly includes non-estate property.

There are insufficient records and evidence to conclude that the Bank is adequately protected by assets of the estate. As indicated, the financial records do not provide a clear understanding of the inventory or accounts receivable values. Current accounts receivable aging reports and inventory reports were requested from the Debtor's counsel; they were provided after hours on January 27, 2020 and there have been no further sales and no changes in accounts receivable since the Petition Date. With the understanding that reliance on the Debtor's assets alone fails to meet the burden of establishing adequate protection, the Debtor improperly includes assets of RC Farms as well as the Whitelatch Trust in its Motion. Use of cash collateral should be denied where a debtor attempts to include assets of non-debtor third parties in the estate for purposes of adequate protection and future revenue. In *In re Negus-Sons, Inc.*, the court denied use of cash collateral where the debtor failed to take into account the fact that at least $400,000.00 of accounts receivable and almost $700,000.00 of future projected revenue belonged to an affiliated company whose assets debtor had no right to use. *In re Negus-Sons, Inc.*, 428 B.R. at 513. This is analogous to the Debtor's proposal which includes revenue and assets of RC Farms and real property owned by the Whitelatch Trust.

First, the real property of RC Farms and Whitelatch Trust is **not** property of this

HOMESTREET BANK'S OBJECTION TO MOTION FOR ORDER:
(A) AUTHORIZING EMERGENCY & INTERIM USE OF CASH
COLLATERAL; AND (B) AUTHORIZING FINAL USE OF CASH
COLLATERAL - 11

FOSTER GARVEY P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

EG-10744918.1

20-00044-WLH11    Doc 46    Filed 01/27/20    Entered 01/27/20 13:02:53    Pg 11 of 25

bankruptcy estate and cannot be considered adequate protection provided by the Debtor. Even if the real property of non-debtor third parties was allowed for this analysis, the real property already secures the Claar Note and RC Farms Note. Likewise, the real property owned by the Debtor is subject to a lien by Baker Boyer Bank.

The Debtor will argue that it filed a motion for joint administration with RC Farms, which allows consolidation of property of the estate. This is an incorrect analysis. While they have filed a motion for joint administration, the Debtor and RC Farms have not been substantively consolidated and there is no motion to do so. In fact, the Debtor and RC Farms (at times) indicate that they may have retained separate counsel based on conflicts between the parties including a direct debtor-creditor relationship. Therefore, the Debtor cannot as a matter of law treat the assets of RC Farms, or that of non-debtor, the Whitelatch Trust, as property of its estate.

Further, neither the Debtor nor RC Farms can include property of the Whitelatch Trust as property of either estate or property which could be used for purposes of adequate protection. This is not only due to the fact that the Whitelatch Trust is not a debtor, the Whitelatch Trust remains subject to the Order Appointing Receiver and the management and control of the Receiver – not the principals of the Debtor.

The only assets available to the Debtor for purposes of adequate protection are assets of this estate – in this case, the Claar personal property. Yet, the Debtor does not even offer a replacement lien for use of HomeStreet's cash collateral (though they refer to it as that in the proposed order). Instead, the Debtor alleges there is an equity cushion based on unreliable and unknown inventory numbers, assets of RC Farms and real property of the Whitelatch Trust, which is currently property of the State Court receivership estate. To rely on an equity cushion, the Debtor must prove to the Court that a substantial equity cushion exists which would constitute the indubitable equivalent of HomeStreet's interest. The law is clear that the existence of a small equity cushion does not constitute adequate protection. *In re Kost*, 102

HOMESTREET BANK'S OBJECTION TO MOTION FOR ORDER: (A) AUTHORIZING EMERGENCY & INTERIM USE OF CASH COLLATERAL; AND (B) AUTHORIZING FINAL USE OF CASH COLLATERAL - 12

FOSTER GARVEY P.C.
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464 3939

EG-10744918.1

20-00044-WLH11    Doc 46    Filed 01/27/20    Entered 01/27/20 13:02:53    Pg 12 of 25

B.R. 829, 831-32 (Bankr. D. Wyo. 1989). As the court is well aware, the Debtor bears the burden of proof on the issue of adequate protection. 11 U.S.C. § 363(p)(1). **The Debtor cannot meet that burden. Instead, it is proposing to continue operating using HomeStreet's collateral which the Debtor admitted in prior proceedings will result in losses and which the State Court found to be impaired.** The Debtor fails to provide sufficient records or evidence that the liens currently in place result in adequate protection. Based on the inability to provide adequate protection, the Debtor's Motion must be denied.

      3.    <u>Retention of control by Receiver and Issue Preclusion.</u>

As indicated, pursuant to the Order Appointing Receiver, the Receiver currently retains authority to manage and control property owned by Whitelatch Trust. This includes the right to collect the rents and maintain, preserve and protect all property. As also indicated above, the State Court found good cause to appoint the Receiver over the Debtor and RC Farms. This includes the findings that (a) the Debtor's and RC Farm's cash deficits and costs from 2016 to 2018 were escalating based upon their tax returns for those years, (b) that the losses were continuing to increase for 2019 based on financial statements provided by the Debtor and RC Farms to HomeStreet in 2019 and (c) that the inventory levels decreased by approximately $739,597 between September 2, 2019 and September 28, 2019 without a commensurate increase in cash or accounts receivable and without payment to HomeStreet. Based on the factual findings, the State Court found as a matter of law that the revenue-producing potential of the Debtor's property is impaired and that remedies available to HomeStreet are inadequate.

These findings constitute issue preclusion under Washington law. Issue preclusion bars relitigation of an issue in a subsequent proceeding involving the same parties. *Scholz v. Washington State Patrol*, 416 P.3d 1261, 1266 (Wash. Ct. App. 2018) *citing Ullery v. Fulleton*, 162 Wash. App. 596, 602, 256 P.3d 406 (2011). Issue preclusion applies when (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding; (2) the earlier proceeding ended in a judgment on the merits; (3) the party against whom issue

HOMESTREET BANK'S OBJECTION TO MOTION FOR ORDER: (A) AUTHORIZING EMERGENCY & INTERIM USE OF CASH COLLATERAL; AND (B) AUTHORIZING FINAL USE OF CASH COLLATERAL - 13

FOSTER GARVEY P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

EG-10744918.1

20-00044-WLH11    Doc 46    Filed 01/27/20    Entered 01/27/20 13:02:53    Pg 13 of 25

1  preclusion is asserted was a party to, or in privity with a party to, the earlier proceeding; and (4)

2  application of issue preclusion does not work an injustice on the party against whom it is

3  applied. *Scholz v. Washington State Patrol*, 416 P.3d at 1257.

4      Here, the parties litigated over the recurring losses and impairment of HomeStreet's

5  collateral. The findings of fact and conclusions of law in the Order Appointing Receiver

6  constitute issue preclusion on the issues before the court. The State Court found that the

7  Debtor will continue to incur losses that impair the value of HomeStreet's collateral requiring

8  the appointment of the Receiver. Therefore, the Receiver should retain the control granted by

9  the State Court after the contested receivership hearing with the Receiver remaining in place for

10  purposes of this bankruptcy. The Receiver is necessary to evaluate the Debtor's business and

11  explore a sale of the overall operations, subject to further order of this court.

12      Therefore, HomeStreet reserves all of its rights and remedies under the Bankruptcy

13  Code and other applicable law and does not waive any rights to argue that 11 USC §543(d)

14  applies in this case. HomeStreet further notifies the court and interested parties that it will be

15  filing a motion pursuant 543(d) to retain the Receiver in this bankruptcy proceeding.

16      4.      Proposed Order.

17      HomeStreet opposes the entry of any order allowing use of cash collateral in this case.

18  However, if the Court enters an interim order, HomeStreet submits that in order to provide any

19  sort of adequate protection, it requires (i) the provision of <u>actual</u> replacement liens in the

20  Debtor's other property and post-petition property as required by § 361 of the Bankruptcy

21  Code, (ii) the payment of interest only payments, (iii) the opportunity to conduct inspections of

22  HomeStreet's collateral; (iv) remove all payments proposed to pay prepetition amounts due

23  (those amounts incurred prior to January 9, 2020 and all amounts for "vintage fruit," which was

24  all incurred prepetition), and (v) no payments to professionals. A copy of a redlined order with

25  those revisions to the proposed order submitted by the Debtor is attached hereto as Exhibit 1.

26  / / /

HOMESTREET BANK'S OBJECTION TO MOTION FOR ORDER:
(A) AUTHORIZING EMERGENCY & INTERIM USE OF CASH
COLLATERAL; AND (B) AUTHORIZING FINAL USE OF CASH
COLLATERAL - 14

FOSTER GARVEY P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

FG:10744918.1

20-00044-WLH11    Doc 46    Filed 01/27/20    Entered 01/27/20 13:02:53    Pg 14 of 25

## CONCLUSION

For the reasons set forth above, HomeStreet requests that the Court deny the Debtor's Motion and any right to use cash collateral.

DATED this 27th day of January, 2020.

FOSTER GARVEY P.C.


By  */s/ Tara J. Schleicher*
    Tara J. Schleicher, WSBA #26884
    Foster Garvey P.C.
    121 SW Morrison Street, Ste. 1100
    Portland, Oregon 97204-3141

HOMESTREET BANK'S OBJECTION TO MOTION FOR ORDER:
(A) AUTHORIZING EMERGENCY & INTERIM USE OF CASH
COLLATERAL; AND (B) AUTHORIZING FINAL USE OF CASH
COLLATERAL - 15

FOSTER GARVEY P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

FG:10744918.1

20-00044-WLH11    Doc 46    Filed 01/27/20    Entered 01/27/20 13:02:53    Pg 15 of 25

Steven H. Sackmann, #00618
Sackmann Law Office
PO Box 409 - 455 E. Hemlock, #A
Othello, Washington 99344
(509) 488-5636 - phone

Toni Meacham, #35068
Attorney at Law
1420 Scooteney Rd
Connell, WA 99326
(509) 488-3289

Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT

IN AND FOR THE EASTERN DISTRICT OF WASHINGTON UNITED STATES

| In Re: | Ch 11 |
|---|---|
| **CLAAR CELLARS, LLC,** | Case No: 20-00044-11 |

ORDER  -1

Steven H. Sackmann
attorney at law
PO Box 409
Othello, WA 99344
509-488-5636

FG:10739043.1

Formatted: Font: 8 pt, Font color: Black

Formatted: Left, Line spacing:  single

| | |
|---|---|
| **Debtor.** | (PROPOSED) |
| | ORDER APPROVING INTERIM USE OF CASH COLLATERAL |

This matter came before the Court on the motion of Claar Cellars, LLC **("Debtor")** for an order: (a) authorizing the Debtor to use cash collateral on an interim basis; and (b) setting a final hearing on the Debtor's motion to use cash collateral **("Motion")**. The following appearances were made at the hearing: (a) Steven H. Sackmann, Toni Meacham for the Debtors; ~~(b) Gary Dyer for the United States Trustee; and~~ and ~~(b) Roger W. Bailey for the Co-Debtor; and (c~~c) Homestreet Bank by its counsel, Tara J. Schleicher. Having reviewed the pleadings filed with the Court and having heard the argument of counsel, and having been informed that HomeStreet Bank reserves all of its rights and remedies under the Bankruptcy Code and other applicable law and does not waive any rights to argue that 11 USC §543(d) apply in this case, the Court hereby finds and orders:

~~1. The Motion has been coupled with a request to limit the time for notice and objections. Given the circumstances of this case the Court finds that it is appropriate to limit the time for objections and notice with respect to the Motion and~~

ORDER -2

**Steven H. Sackmann**
attorney at law
PO Box 409
Othello, WA 99344
509-488-5636

~~FG:10739043.1~~

**Formatted:** Font: 8 pt, Font color: Black

**Formatted:** Left, Line spacing: single

EXHIBIT 1
Page 2 of 9

consider the Motion on an emergency basis.  The Debtor's Motion to Shorten Time is

hereby granted.

      12.    Notice of the motion was provided by certified mail to HomeStreet Bank.

proper pursuant to FRBP 2002 and LBR 2002-1.

      23.    The Motion, as modified herein, is hereby granted until 5:00 p.m. on the

date set forth below in paragraph 3 for the final hearing on use of cash collateral.

      34.    The Court hereby sets a final in-court hearing on the Debtor's motion to

use cash collateral for _____, 2020.  The hearing shall be held at the United

States Bankruptcy Court, _____ and shall commence at _____.    The

Court shall hold a pre-trial conference on _____, __, 2020 at _____ by telephone

conference call.  Parties may attend the pre-trial hearing by calling in to the Court's

conference line (509.353._____).

      45.    Pending the conclusion of the final cash collateral hearing **("Interim Cash**

**Collateral Period")**, the Debtor is authorized to use the Cash Collateral (as described in

the Motion), including crop proceeds to pay the amounts described in the Debtor's

Budget attached to the Motion (not any budgets associated with RC Farms, LLC.

Homestreet Bank shall promptly sign off on and deliver to the Debtor any Cash

Collateral in the form of jointly payable checks in the possession of Homestreet or

ORDER  -3

**Steven H. Sackmann**
attorney at law
PO Box 409
Othello, WA 99344
509-488-5636

FG:10739043.1

Formatted: Font: 8 pt, Font color: Black

Formatted: Left, Line spacing:  single

which are presented to Homestreet by the Debtor after the date of this Order. Notwithstanding the foregoing, the Debtor shall not be authorized to pay the following amounts in the Budget: (a) those amounts that attributable to the time prior to the Petition Date (which will reduce all payments in the Budget listed for the month of January 2020); (b) any amounts beyond the months of February 2020; (c) the $19,000 payments each in January and February 2020 for "vintage fruit"; and (d) $2,500 payments each in January and February 2020 for "legal fees" since those have not been approved by this Court. All Cash Collateral shall immediately be deposited into the Debtor-in-Possession account.

5_6_. During the Interim Cash Collateral Period, the Debtor shall provide to Homestreet Bank, the Chapter 11 Trustee and any other party requesting special notice, weekly a monthly report **("Weekly Report")** describing: (a) the expenses paid by the Debtor during the preceding week month on a cash basis; and (b) a comparison of the actual expenses paid to the expenses estimated by the Budget for such period. The first Weekly Monthly Report shall be due three (3) days following the first week month of cash collateral usage pursuant to this Order with subsequent reports due on three (3) days after the conclusion of each subsequent one (1) week month period. Further, as a condition of use of Cash Collateral, during the Interim Cash Collateral Period, Debtor

ORDER  -4

Steven H. Sackmann
attorney at law
PO Box 409
Othello, WA 99344
509-488-5636

FG:10739043.1

Formatted: Font: 8 pt, Font color: Black

Formatted: Left, Line spacing: single

shall cooperate with and allow HomeStreet Bank to conduct an inspection of Debtor's inventory at the Debtor's premises.

67. The Debtor, with the prior written consent of Homestreet Bank and the Chapter 11 Trustee may use Cash Collateral in excess of the amounts described in the Budget so long as such amounts are used for paying expenses incurred in the Debtors' ordinary course of business.

78. Under 11 U.S.C. §§361 and 363(e), Homestreet Bank is entitled to adequate protection of its interests in the Cash Collateral. The Court has allowed the Debtor's use of Cash Collateral, subject to and expressly conditioned on the provisions of this Order (collectively, the "**Adequate Protection Measures**"). Nothing herein shall preclude Homestreet Bank from asserting at any future time that they are not adequately protected or that the value of its collateral is at risk of devaluation or loss.

89. As one Adequate Protection Measure, and as security for any diminution in value of the Cash Collateral, Homestreet Bank is hereby granted, effective and perfected as of the Petition Date, a valid and perfected replacement lien ("Replacement Lien") on the following ("Replacement Collateral"): (a) all of the real property owned by Debtor, subject to any valid and perfected mortgage or trust deed in such property; (b) all shall retain its Real Estate Mortgages and pre-petition personal property of the

ORDER -5

Steven H. Sackmann
attorney at law
PO Box 409
Othello, WA 99344
509-488-5636

FG:10739043.1

Debtor and all personal property and proceeds thereof of the Debtor acquired post-petition, security interest in all personal property of RC Farms and Claar Cellars, except 2020 crops, including all insurance claims and insurance recoveries related to the Debtor's assets, including but not limited to inventory of Debtor and crops in which Claar Cellars may have an insurable interest2019 crops, specifically including, but not limited to, the Debtor's right to receive payments from the Federal Crop Insurance Corporation; and (c) any contract or lease rights of the Debtor.

10.    As an additional Adequate Protection Measure, the Debtor shall make interest only payments to HomeStreet Bank for the portion of January after the Petition Date and for the entire month of February.  The January payment shall be due to HomeStreet Bank three (3) days after the entry of this Order and the February payment shall be due to HomeStreet Bank on the day immediately prior to the final hearing referenced in paragraph 3 above.

110.    To the extent that the Adequate Protection Measures or other measures this Court may order fail to provide adequate protection for the interests of Homestreet Bank in the Cash Collateral, Homestreet Bank shall have super-priority claims under 11 U.S.C. § 507(b).

ORDER  -6

**Steven H. Sackmann**
attorney at law
PO Box 409
Othello, WA 99344
509-488-5636

FG:10739043.1

Formatted: Font: 8 pt, Font color: Black
Formatted: Left, Line spacing:  single

12. The automatic stay imposed under 11 U.S.C. § 362(a) shall be modified to permit Debtor and Homestreet Bank to exercise their rights and perform their duties under this Order, *provided* however that nothing contained in this Order shall authorize any party to take any collection action against the Debtors without receiving further authorization from this Court.

13. This Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Replacement Liens. No further action, conduct, filing, recording, or notice of any kind is required to perfect the Replacement Lien or to give Homestreet Bank the priorities granted in this Order. Homestreet Bank may in its discretion file and record such financing statements, mortgages, notices of liens, and other instruments or documents to evidence or perfect the Replacement Lien according to non-bankruptcy law, and all financing statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date.

14. Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), this Order is valid and binding on and inures to the benefit of the Debtor and Homestreet Bank and all other creditors of the Debtor, any trustee, or examiner or custodian retained under 11 USC § 543(d), any Court-appointed

ORDER  -7

**Steven H. Sackmann**
attorney at law
PO Box 409
Othello, WA 99344
509-488-5636

FG:10739043.1

Formatted: Font: 8 pt, Font color: Black

Formatted: Left, Line spacing: single

EXHIBIT 1
Page 8 of 9

committee in this case, and all other parties in interest and their respective successors and assigns.

15. The Debtor and its principals and employees shall cooperate with HomeStreet Bank in ensuring that HomeStreet Bank's consultants and appraisers have access to the Debtor's property (both real and personal) in order to inspect, appraise or otherwise evaluate Debtor's property.

16. The fourteen-day stay provided for in Bankruptcy Rule 4001(a)(3) shall not apply to this Order.

17. This Court has and shall retain jurisdiction to enforce this Order according to its terms.

///End of Order///

ORDER  -8

Steven H. Sackmann
attorney at law
PO Box 409
Othello, WA 99344
509-488-5636

FG:10739043.1

Formatted: Font: 8 pt, Font color: Black

Formatted: Left, Line spacing: single

Presented by:

_____
STEVEN H. SACKMANN, #00618
Attorney for Debtors
PO Box 409 - 455 E. Hemlock, #A
Othello, Washington 99344
(509) 488-5636


_____
TONI MEACHAM, WSBA #35068
Attorney for Debtors
1420 Scooteney Road
Connell, Washington 99326
(509) 488-3289

ORDER  -9

**Steven H. Sackmann**
attorney at law
PO Box 409
Othello, WA 99344
509-488-5636

Formatted: Font: 8 pt, Font color: Black

Formatted: Left, Line spacing:  single

FG:10739043.1

**CERTIFICATE OF SERVICE**

I hereby certify on January 27, 2020, I electronically filed the foregoing HOMESTREET BANK'S OBJECTION TO MOTION FOR ORDER: (a) AUTHORIZING EMERGENCY & INTERIM USE OF CASH COLLATERAL; AND (b) AUTHORIZING FINAL USE OF CASH COLLATERAL with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the persons listed below:

- Gary W Dyer    Gary.W.Dyer@usdoj.gov
- Metiner G Kimel    mkimel@mkimellaw.com, roberta@mkimellaw.com;julie@mkimellaw.com;kimelmr89262@notify.bestcase.com
- Toni Meacham    ToniPierson@RocketMail.Com
- Bruce K Medeiros    bmedeiros@dbm-law.net, sabrahamson@dbm-law.net;cnickerl@dbm-law.net;tnichols@dbm-law.net
- Steven H Sackmann    steve@sackmannlaw.com, sackmannlaw@hotmail.com
- Tara J. Schleicher    tara.schleicher@foster.com, kesarah.rhine@foster.com
- US Trustee    USTP.REGION18.SP.ECF@usdoj.gov

DATED this 27th day of January, 2020.

FOSTER GARVEY PC


/s/ Tara J. Schleicher
Tara J. Schleicher
121 SW Morrison Street, 11th Fl
Portland, Oregon 97204-3141
Phone: (503) 228-3939
Fax: (503) 226-0259
Tara.Schleicher@foster.com

HOMESTREET BANK'S OBJECTION TO MOTION FOR ORDER:
(A) AUTHORIZING EMERGENCY & INTERIM USE OF CASH
COLLATERAL; AND (B) AUTHORIZING FINAL USE OF CASH
COLLATERAL - 16

FOSTER GARVEY P.C.
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464 3939

FG:10744918.1