Tara J. Schleicher, WSBA #26884
Jason M. Ayres, WSBA #39141
Foster Garvey P.C.
618 West Riverside Avenue, Suite 300
Spokane, WA 99201
Telephone: (503) 228-3939
Facsimile: (503) 226-0259
tara.schleicher@foster.com
jason.ayres@foster.com

UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re<br><br>CLAAR CELLARS, LLC,<br><br>            Debtor.<br><br>In re<br><br>RC FARMS, LLC,<br><br>            Debtor. | Lead Case No. 20-00044-WLH11<br>(Jointly Administered)<br><br>Case No. 20-00045-WLH11<br>(Jointly Administered)<br><br>**HOMESTREET BANK'S OBJECTION TO THE CONFIRMATION OF DEBTORS' JOINT PLAN OF REORGANIZATION** |

HomeStreet Bank ("HomeStreet") hereby submits this objection to the confirmation of Debtors' Joint Plan of Reorganization [ECF 343] (the "Plan"). HomeStreet objects to the Plan because the Debtors cannot meet the requirements of 11 USC §1123 or 11 USC §1129 as discussed in detailed below. The Debtors have no real means to implement the Plan. Further, all future operations are based on speculation and are unsupported by the historical or current financial state of the Debtors. Indeed, the Debtors already failed to meet their projections and sales detailed in their Disclosure Statement. The Plan simply is not feasible and, if confirmed, will only allow the Debtors to continue the same course of business, which has resulted in substantial losses for the last several years and pre-COVID. This Objection is supported by the

HOMESTREET BANK'S OBJECTION TO THE
CONFIRMATION OF DEBTORS' JOINT PLAN OF
REORGANIZATION - 1

FOSTER GARVEY P.C.
*618 West Riverside Avenue, Ste 300*
*Spokane, Washington 99201*
*(503) 228-3939*

20-00044-WLH11   Doc 384   Filed 10/19/20   Entered 10/19/20 16:32:13   Pg 1 of 15

following points and authorities, the records and files in this proceeding and the Declaration of Tara J. Schleicher ("Schleicher Dec.").

## LEGAL ANALYSIS

A. <u>Failure to comply with applicable provisions of Title 11 (11 USC §1129(a)(1)).</u>

Under 11 USC § 1129(a)(1), the plan must comply with the "applicable provisions of [title 11]." This requirement has been interpreted by courts as requiring that the plan comply with the provisions relating to the plan's internal structure and drafting, such as §§ 1122 and 1123 governing classification and contents of plans. *See, e.g., In re PC Liquidation Corp.*, 383 BR 856, 866 (NDNY 2008) ("Section 1129(a)(1) has been interpreted to be applicable to provisions of the Bankruptcy Code pertaining to the form and content of reorganization plans").

1. Section 1123(a)(1) – Improper Classification of Claims.

The Debtors' Plan fails to meet Bankruptcy Code's requirements governing classification of claims. Section 1123(a)(1) provides that "a plan shall (1) designate, subject to section 1122 of this title, classes of claims, **other than** claims of a kind specified in section 507(a)(2) . . ." (emphasis added). The Debtors' Plan fails comply with 1123(a)(1) because the Debtors' Plan classifies two claims of a kind specified in section 507(a)(2). Class 1 under the Debtors' Plan is for administrative expenses under section 507(a)(2) (Plan, p. 11). Class 2 under the Debors' Plan is for US Trustee fees under section 507(a)(2). (Plan, p. 12). Thus, the Debtors' Plan fails to comply with section 1123(a)(1).

2. Section 1123(a)(5) – Lack of Identifiable Means of Implementation.

Section 1123 of the Bankruptcy Code requires that a chapter 11 plan proponent "provide adequate means for the plan's implementation. . . " 11 USC § 1123(5). The Debtors' Plan fails to meet that requirement for several reasons.

First, the Debtors' Plan fails to meet the requirements of 1129(a)(1) because it does not provide "adequate" means for plan implementation. Rather, the only discussion of implementation is, at least with respect to HomeStreet's claim, vague, ambiguous and

HOMESTREET BANK'S OBJECTION TO THE
CONFIRMATION OF DEBTORS' JOINT PLAN OF
REORGANIZATION - 2

FOSTER GARVEY P.C.
*618 West Riverside Avenue, Ste 300*
*Spokane, Washington 99201*
*(503) 228-3939*

20-00044-WLH11    Doc 384    Filed 10/19/20    Entered 10/19/20 16:32:13    Pg 2 of 15

unspecified in any detail. The Debtors' Plan only provides that "[t]he Reorganized Debtor **may** pay the HomeStreet Claim through **any method available** to the Reorganized Debtor including operations, sale, refinance, equity infusion or otherwise." (Plan, p. 14). Such a statement is void of any specific or really even any general method for means implementation. The Debtor "may" pay the HomeStreet Claim. Given the lack of any plan for repayment, it likely will not. The Debtors' principal, Robert Whitelatch, testified at his deposition on October 14, 2020 (the "Deposition"), that: (a) he had no prospect for refinancing at this time and was not pursuing it currently; (b) he admitted that operations alone simply would not suffice to pay the creditors' claims; (c) he admitted that he has not listed the property of the estate for sale even though no objections were filed to his motion to employ a broker; (d) he stated that the Debtors' principals will not be infusing any equity to perform the Debtors' Plan; (e) he admits that, despite his broker's advice, he wants to list the properties at a price that could be viewed by the market as overpriced; and (f) he has no set time to list the property for sale. Such vague references and admissions regarding any real plan does not provide the adequate means required by 1123.

Second, the Debtors' Plan does not provide adequate means of implementation because it lists hundreds of thousands of dollars in grape or "fruit" income that simply will not be coming in. Mr. Whitelatch testified at his deposition that RC Farms, LLC ("RCF") has not entered into even one contract for the sale of grapes to any third party in 2020.[1] Yet, the Debtors' Disclosure Statement represents that "only a portion of the wine grapes grown by the Reorganized Debtor will be utilized by the Reorganized Debtor to produce new inventory" and that "remainder of the grape crops **(between $110,000 and $145,000)** will be sold to third parties to generate income under the Plan Thus, as indicated by the recent dumping issue whereby the Debtors are dumping a third of their inventory, because RCF could not sell grapes

---

[1] Mr. Whitelatch testified he may have a sale of grapes that could occur in the next few weeks, but only for $9,600 to $16,000 gross. That is 2% to 3% of the projected amount of grape revenue for 2020. Mr. Whitelatch testified that the "juice" sales (unfermented juice from the grapes) is *de minimis*.

HOMESTREET BANK'S OBJECTION TO THE
CONFIRMATION OF DEBTORS' JOINT PLAN OF
REORGANIZATION - 3

FOSTER GARVEY P.C.
*618 West Riverside Avenue, Ste 300*
*Spokane, Washington 99201*
*(503) 228-3939*

20-00044-WLH11    Doc 384    Filed 10/19/20    Entered 10/19/20 16:32:13    Pg 3 of 15

to third parties, Claar must now take the grapes in contradiction to how the Debtors represented they would operate. Under the Debtors' Plan, Claar and RCF would be merged and no income will be produced in 2020 for the sale of grapes, which means there is no income from "Fruit/Juice Sales" in the Debtors' Plan projections. Such a lack of fruit sales or income from the sale of fruit dooms the Debtors' Plan and, obviously, does not provide adequate means for implementation.

Additionally, the Debtor's Plan states that Circle Ground is to be sold on or before September 30, 2021 and if not, then sold at auction no later than December 31, 2021. (Plan, pp. 15 and 16). However, the Circle Ground is part of Taylor Flats, which is the subject of the adequate protection lien granted to HomeStreet by the Debtors. The Plan provides for the retention and utilization of the net proceeds of the Circle Ground to fund the Debtors' operations, "including payments required by the Plan." Thus, the proceeds of the Circle Ground are to be used to pay all plan payments with only $148,366 to be paid to HomeStreet. HomeStreet believes that its adequate protection lien is significantly higher than that. Yet, proceeds from its collateral may be used to pay all creditors. That is improper and violates 1122(a), which requires that debtors place a claim in a particular class that is substantially similar to the other claims of such class. This use of the proceeds from HomeStreet's collateral for its adequate protection lien violates that provision by treating HomeStreet's secured claim like the Debtors' other separately classified unsecured and secured creditors.

B. <u>The Debtors fail to comply with the provisions of Title 11 and the Debtor's Plan has not been proposed in good faith. (11 U.S.C. § 1129(a)(2)-(3)).</u>

A bankruptcy court shall confirm a plan only if the debtor shows that it has "complie[d] with the provisions of [the Bankruptcy Code]," 11 U.S.C. § 1129(a)(2), and that its plan has been "proposed in good faith and not by any means forbidden by law," 11 U.S.C. § 1129(a)(3). Because bankruptcy courts frequently analyze potential violations of sections 1129(a)(2) and (a)(3) together, certain common themes appear routinely in the case law. *In re Dunlap Oil Co.,*

HOMESTREET BANK'S OBJECTION TO THE
CONFIRMATION OF DEBTORS' JOINT PLAN OF
REORGANIZATION - 4

FOSTER GARVEY P.C.
*618 West Riverside Avenue, Ste 300*
*Spokane, Washington 99201*
*(503) 228-3939*

20-00044-WLH11    Doc 384    Filed 10/19/20    Entered 10/19/20 16:32:13    Pg 4 of 15

*Inc.*, 2014 WL 6883069, at *4 (9th Cir. B.A.P. Dec. 5, 2014). Courts have focused on compliance by the plan proponent with the disclosure and solicitation requirements of sections 1125 and 1126. 7 Collier on Bankruptcy P 1129.02 (16th 2020).

Additionally, case law in the Ninth Circuit makes it clear that a debtor's good faith (or lack thereof) is a holistic inquiry based on the "totality of the circumstances" in the bankruptcy case. *In re Deed & Note Traders, LLC*, 2012 WL 1191891, at *10 (9th Cir. B.A.P. Apr. 5, 2012). A lack of good faith may be premised on the debtor's failure to exhaustively identify and/or pursue all potential sources of creditor recoveries. *In re Hamilton*, 2018 WL 3637905, at *9 (9th Cir. B.A.P. July 31, 2018). A lack of good faith may also be based on the debtor's poor communication or engagement with creditors. *In re McInerney*, 487 B.R. 468, 476-77 (Bankr. E.D. Mich. 2012).

In this case, since the disclosure statement phase, HomeStreet has learned troubling things about the Debtors' failure to disclose full, complete and relevant information to creditors. First, HomeStreet learned that the Debtors considered one-third of its wine inventory to be worth nothing while continuing to assert that it was worth $1,276,670.94 on its September 30, 2020 operating report – a number that has virtually remained unchanged since the schedules were filed, after taking into account the sale reports on the September 30, 2020 operating report. The values stated on Claar's wine inventory list painted a very different picture of the inventory value for the wines that Claar obtained authority to dump -- over $400,000 worth. This only came to light during discovery conferral call on October 9th, well after responsive documents were due from the Debtors on that point. If Claar thought its wine inventory was over $400,000 overstated, that should have been disclosed in the disclosure statement and prior to solicitation. That failure to disclose is the epitome of "poor communication or engagement with creditors" and constitutes bad faith.

Additionally, the Debtors have overstated accounts receivable as well. Claar's largest client, Naked Winery, with over 63% of its accounts receivable, is not truly accounts receivable

HOMESTREET BANK'S OBJECTION TO THE
CONFIRMATION OF DEBTORS' JOINT PLAN OF
REORGANIZATION - 5

FOSTER GARVEY P.C.
618 West Riverside Avenue, Ste 300
Spokane, Washington 99201
(503) 228-3939

20-00044-WLH11    Doc 384    Filed 10/19/20    Entered 10/19/20 16:32:13    Pg 5 of 15

or sales at all. Mr. Whitelatch testified during his deposition that of the current amount of accounts receivable listed in his September operating report, $119,000 of the $139,928 (85%) listed as an accounts receivable from Naked Winery was not due. Moreover, Mr. Whitelatch stated that if Naked Winery chose not to pick up any of the $119,000 worth of the "order," that Claar had no right to collect it from Naked Winery. Simply put, Claar's representation that it has current accounts receivable is overstated by 77%. That carries over into an overstatement of the sales report as well.

These overstatements of inventory, accounts receivable and sales are not "harmless error" and significantly affect creditors' rights, thus violating 11 USC §1129(a)(2).

Another example of the Debtors' failure to communicate or engage with creditors, despite a court order, is the Debtors' failure to provide the required information to the independent CPA as set forth in the Final Cash Collateral Order [ECF 177] at page 9. As previously stated to this court, the Debtors willfully failed to provide Ms. Zalaznik with the information she needed to restate the financial statements. The Debtors are flouting this court's order with no repercussion. That is bad faith.

With respect to 11 USC §1129(a)(3), the proposed transfer of the Trust Property to the Reorganized Debtor without any consideration is a voidable transfer under Washington law. RCW 19.40.051 provides that a transfer is voidable by a current creditor of the transferor when the transfer is made "without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation". Mr. Whitelatch testified during his deposition that the only consideration that will be given to the Trust for the Trust Property is "love and affection." That is obviously not reasonably equivalent value for the Trust Property and is voidable as to HomeStreet, whose claim against the Trust arose prepetition and a receiver is currently appointed for the Trust Property. The proposed transfer is pursuant to a "means forbidden by law."

HOMESTREET BANK'S OBJECTION TO THE
CONFIRMATION OF DEBTORS' JOINT PLAN OF
REORGANIZATION - 6

FOSTER GARVEY P.C.
*618 West Riverside Avenue, Ste 300*
*Spokane, Washington 99201*
*(503) 228-3939*

20-00044-WLH11    Doc 384    Filed 10/19/20    Entered 10/19/20 16:32:13    Pg 6 of 15

Further, the Plan is proposed by a means forbidden by law because the Debtors state summarily that an unspecified person or persons will "revoke the Whitelatch Trust and transfer the 27-acre parcel with shop and house (the "Trust Property") into the Reorganized Debtor, Claar Cellars, LLC." The Debtors fail to inform creditors that they are prohibited from doing so (i) under Washington law, (ii) by virtue of the fact that a receiver, Critical Point Advisors, LLC ("the "Receiver") has control over the Trust and the Trust Property under the order entered by Franklin County Superior Court on December 23, 2019 (the "Receivership Order"), and (iii) such action would violate the due on sale clause in the mortgage granted by the Trust to HomeStreet and would trigger the immediate payment of all amounts due by the Trust to HomeStreet. Under RCW 11.98.070 (12), (18) and (38), termination of the Whitelatch Trust (assuming for the sake of argument, it can be terminated when the Receiver has been appointed for the Trust), does not result in a transfer of the Trust Property to the Whitelatches individually to do what they wish with it. Rather, under RCW 11.98.070 (12) and (18), because the Trust mortgaged the Trust Property to HomeStreet, it will remain in the Trust and subject to that mortgage under RCW 11.98.070(38) and, further, subject to the Receiver's control under the Receivership Order.

C. <u>The Debtor's Plan fails to comply with treatment of professional fees under 11 USC §1129(a)(4))</u>.

Section 1129(a)(4) requires that the court exercise substantive control over fees and costs related to confirmation and the chapter 11 case, with section 330(a) requiring that all professionals employed by the estate have their employment approved and fees reviewed. COLLIER ON BANKRUPTCY, ¶1129.02[4].

The requirements are twofold: first, disclosure; and second, reasonableness. *Id.*

With respect to disclosure, there is no disclosure of the amount of any retainers held by the Debtors' professional, if any or the amount of fees incurred as required on the operating reports (at least by Claar's counsel).

HOMESTREET BANK'S OBJECTION TO THE
CONFIRMATION OF DEBTORS' JOINT PLAN OF
REORGANIZATION - 7

FOSTER GARVEY P.C.
*618 West Riverside Avenue, Ste 300*
*Spokane, Washington 99201*
*(503) 228-3939*

20-00044-WLH11    Doc 384    Filed 10/19/20    Entered 10/19/20 16:32:13    Pg 7 of 15

With respect to reasonableness, the Plan calls for payment of the professionals' fees from HomeStreet's adequate protection collateral (the Taylor Flats Circle Ground) without any process for determining HomeStreet's secured interest in the proceeds of that property. Payment of administrative expenses from a secured creditor's collateral violates the Code and, thus is not reasonable. For that reason as well, the Plan fails to comply with 1129(a)(4).

D. <u>The Debtor's Plan fails to Comply with 11 U.S.C. § 1129(a)(5)</u>

Section 1129(a)(5)(A)(i) requires the proponent of a plan to disclose the identity of certain individuals who will hold positions with the debtor or its successor after confirmation of the plan. Section 1129(a)(5)(A)(ii) requires that the service of such individuals be "consistent with the interests of creditors and equity security holders and with public policy." *In re Drexel Burnham Lambert Grp., Inc*., 138 B.R. 723, 760 (Bankr. S.D.N.Y. 1992) citing *In re Apex Oil Co*., 118 B.R. 683, 704–05 (Bkrtcy.E.D.Mo.1990) (§ 1129(a)(5)(A)(ii) is satisfied where debtors as well as creditors' committee believe control of entity by proposed individuals will be beneficial). This provision was designed "to insure the creditors and stockholders a management faithful to its trust and able to perform its duty so that the reorganized company may operate as a successful economic unit," *In re Spectrum Arena, Inc.,* 340 F. Supp. 794, 802 (E.D. Pa. 1971), <u>aff'd,</u> 462 F.2d 156 (3d Cir. 1972).

In addition, section 1129(a)(5)(B) requires a plan to disclose the identity of any "insider" to be employed or retained by the reorganized debtor and the "nature of any compensation" for such insider. *In re Apex Oil Co*., supra, 118 B.R. at 704–05 (§ 1129(a)(5)(B) is satisfied where plan fully disclosed that certain insiders will be employed by reorganized debtor and the terms of employment of such insiders).

The Debtors' Plan proposes to allow the Debtors' current owners to freely manage the operations in their "sole discretion." (Plan, p. 39). This includes authorization to enter into leases and other agreements with no court approval needed for any post-confirmation operations. *Id.* at pp. 39-40. The Debtors may also increase the salaries of the owners and/or

HOMESTREET BANK'S OBJECTION TO THE
CONFIRMATION OF DEBTORS' JOINT PLAN OF
REORGANIZATION - 8

FOSTER GARVEY P.C.
*618 West Riverside Avenue, Ste 300*
*Spokane, Washington 99201*
*(503) 228-3939*

20-00044-WLH11    Doc 384    Filed 10/19/20    Entered 10/19/20 16:32:13    Pg 8 of 15

make distributions to them in their sole discretion so long as it believes it can make distributions under the Plan. Further, the Debtors can enter into loans or financing arrangements in their sole discretion.

For the reasons set forth above, the Debtors have not properly managed the operations of the Debtor entities for years. The Debtors just produced the 2019 tax return and it demonstrates significant escalating losses for these entities. The Debtors are reporting phantom sales, they have no plan regarding how to change the operations to make them profitable, they are misrepresenting the value of their wine inventory. The Debtors cannot be relied upon to successfully operate the Debtors or properly manage farming, production, marketing or sale operations. The Debtors' Plan fails to comply with section 1129(a)(5)(A)(ii), because the continuance of the Whitelatches to manage and operate the Debtors is not consistent with the interests or creditors.

The Debtors' Plan also fails to comply with section 1129(a)(5)(B) because it does not disclose the nature of compensation for the owners. Instead, the Plan would allow the Debtors to increase or decrease the salary of the owners while also making distributions to the owners depending on the Debtor's financial performance. This is not a sufficient disclosure of the insiders' compensation. With no oversight and the ability to operate in its sole discretion, the Debtors can make whatever post-confirmation payments they want to the owners while HomeStreet and other creditors wait until December 31, 2021 to see if the Debtor can make a payment under its Plan. The Debtor's disclosure of compensation violates 1129(a)(5)(B) and is inequitable as to creditors of the estate.

E.      The Debtor's Plan does not meet the best interests of creditors test (11 USC § 1129(a)(7)).

Section 1129(a)(7) requires the plan proponent to demonstrate that a rejecting creditor will receive at least as much in a chapter 7 liquidation. This means that, absent consent, an

HOMESTREET BANK'S OBJECTION TO THE
CONFIRMATION OF DEBTORS' JOINT PLAN OF
REORGANIZATION - 9

FOSTER GARVEY P.C.
618 West Riverside Avenue, Ste 300
Spokane, Washington 99201
(503) 228-3939

20-00044-WLH11    Doc 384    Filed 10/19/20    Entered 10/19/20 16:32:13    Pg 9 of 15

impaired creditor must receive property that has a present value equal to its hypothetical chapter 7 liquidation distribution as of the plan's effective date.

In this case, HomeStreet Bank will not receive or retain an amount under the Plan equal to or more than liquidation value because the Debtors have already failed to meet the projections attached as Exhibit 1 to the Debtors' Plan. For example, the Debtors projected to sell grapes to third parties and bring in $468,000 in revenue in 2020 from such sales; the Debtors have brought in nothing in grape sales to date. The Debtors will not be generating that revenue in 2020 and thus, it will be operating at a loss and will not be able to make its plan payments.

The evidence at the confirmation hearing will demonstrate that the Debtors' Plan is simply not feasible, as discussed below, and its creditors will reap more from a sale of the properties by a chapter 7 trustee than it would by waiting for payment from a failing operation.

F. <u>The Debtor's Plan is not feasible</u>.

Under code section 1129(a)(11), the court must determine if the Debtor's Plan is feasible by independently evaluating its terms to assess whether it offers a reasonable probability of success. See, e.g., 11 USC § 1129(a)(11); *Matter of Pizza of Hawaii, Inc*., 761 F.2d 1374, 1382 (9th Cir. 1985) (explaining that that the purpose of 1129(a)(11) is to prevent the confirmation of visionary schemes that promise creditors more than the plan proponent can attain after confirmation); *In re Leslie Fay Cos*., 207 B.R. 764, 788 (Bankr. S.D.N.Y. 1997) ("The court must find that the plan is workable and has a reasonable likelihood of success.").

When asked during his deposition what specific steps the Debtors would take to turn their financial results around, Mr. Whitelatch stated that there was nothing that the Debtors would be doing differently; rather, they would just be "working harder" doing the same things.

When a plan proponent proposes to fund a plan from "operating revenue," then its financial performance is "probative of feasibility," including the business' performance during

HOMESTREET BANK'S OBJECTION TO THE
CONFIRMATION OF DEBTORS' JOINT PLAN OF
REORGANIZATION - 10

FOSTER GARVEY P.C.
*618 West Riverside Avenue, Ste 300*
*Spokane, Washington 99201*
*(503) 228-3939*

20-00044-WLH11    Doc 384    Filed 10/19/20    Entered 10/19/20 16:32:13    Pg 10 of 15

the bankruptcy proceeding. See, e.g., *In re Merrimack Valley Oil Co., Inc.*, 32 B.R. 485, 488 (Bankr. D. Mass. 1983), *In re Northern Protective Services, Inc.*, 8 B.C.D. 1363, 19 B.R. 802 (Bkrtcy.W.D.Wash.1982). In conducting its feasibility analysis, "[i]ncome projections indicating financial progress must be based on concrete evidence of financial progress, and must not be speculative, conjectural or unrealistic predictions." *Id*; *In re Stuart Motel, In*c., 8 B.R. 48, 247 B.C.D. 54 (Bkrtcy.S.D.Fla.1980).

The Debtors' Plan is not supported by historical records. The Debtors have lost money and had escalating losses year over year since 2016. Their revenues for both grapes (non-existent) and wine (grossly overstated) are dismal in this bankruptcy proceeding. As of September 30, 2020, according to their financial reports, Claar is under budget in income by over $250,000. When you take out the nonexistent Naked Winery "sales" of $119,000, Claar is actually under budget by $369,000 plus. The Debtors may contend that Claar's profits are positive, but that is only because it has not make vintage fruit payments to RC Farms. Currently, there are no historical projections upon which any party can rely for purposes of analyzing feasibility.

G.     The Plan is not fair and equitable to HomeStreet.

Absent a sale of the Circle Ground in the next year, the Debtors are not proposing to make any payments to HomeStreet Bank until December 31, 2021. If the Debtors do sell the Circle Ground within a year, and they make a payment to HomeStreet, then the Debtors do not propose to make another plan payment to HomeStreet until December 31, 2022. That means that if the Circle Ground sold in January of 2021, HomeStreet has to wait two years for any payment from the Debtors under their Plan. That is not fair and equitable. That would effectively give the Debtor two years to operate without making any payment to HomeStreet - during which time, the Debtors would be free to compensate and make distributions to their principals. The payments are also based on a twenty-five (25) year amortization. As a result, the Debtors are proposing a balloon payment to HomeStreet Bank at the end of five (5) years

HOMESTREET BANK'S OBJECTION TO THE
CONFIRMATION OF DEBTORS' JOINT PLAN OF
REORGANIZATION - 11

FOSTER GARVEY P.C.
*618 West Riverside Avenue, Ste 300*
*Spokane, Washington 99201*
*(503) 228-3939*

20-00044-WLH11    Doc 384    Filed 10/19/20    Entered 10/19/20 16:32:13    Pg 11 of 15

based on speculation and the hopes of making a profit. Additionally, the payment they propose to make to HomeStreet from the sale of the Circle Ground does not provide HomeStreet the adequate protection lien it was promised because the diminution in value of HomeStreet's collateral is significantly more than the proposed $148,000 payment.

The Debtors also proposes a forty-five (45) day cure period on any default after written notice is received. This is excessive, especially considering the fact that the Debtors are only proposing annual payments. The Debtors have twelve (12) month periods to prepare to make payments to creditors, yet it is proposing to have another forty-five (45) <u>after</u> receiving written notice of default. This is inequitable and prejudicial to HomeStreet. The Debtors have not provided any justification for this type of cure period.

Last, the Debtors offer minimal reporting to HomeStreet. The Debtors' failure to comply with this court's order regarding the review of financial statements by the independent CPA, its overstatement of inventory amounts throughout the case and its over-reporting of sales do not justify allowing this level of control for the Debtors. The Debtors would like to operate with no oversight or accountability. For all of the reasons discussed herein, the Debtors' Plan is not fair and equitable.

H. <u>The Debtor's Plan fails to satisfy the absolute priority rule (11 USC §1129(b)(2).</u>

The absolute priority rule requires that the debtor's plan pay creditors before equity be allowed to retain their interests. *In re Armstrong World Indust. Inc*., 432 F3d 507, 512 (3d Cir 2006); *In re Bonner Mall P'ship*, 2 F.3d 899 (9th Cir. 1993). It is plain under the Debtor's Plan that the current owners retain their equity ahead of payment to all creditors in this case without contributing anything money (Plan, p. 35). While a debtor in chapter 11 may be allowed to retain equity interests, unless the debtor is making 100% payments to all creditors, the equity holder must contribute new value sufficient to compensate creditors for that retention, not just through continued management, but with money or money's worth. *Case v. Los Angeles Lumber Co.,* 308 US 106, 122 (1939) ("[t]he stockholder's participation must be based on a

HOMESTREET BANK'S OBJECTION TO THE
CONFIRMATION OF DEBTORS' JOINT PLAN OF
REORGANIZATION - 12

FOSTER GARVEY P.C.
*618 West Riverside Avenue, Ste 300*
*Spokane, Washington 99201*
*(503) 228-3939*

20-00044-WLH11    Doc 384    Filed 10/19/20    Entered 10/19/20 16:32:13    Pg 12 of 15

1 contribution of money or money's worth, reasonably equivalent in view of all of the
2 circumstances to the participation of the stockholder").

3 In this case, the Debtors, without sufficient information, with failed projections to date, with a lack of any real funds, with no plans to turn things around, an unwillingness to sell or take any substantive efforts to sell the properties and a stubborn overinflated sense of what the operations are worth, the Debtors simply state that their plan will pay creditors 100% of their claims. Such a statement is, in the words of Justice Douglas, "ephemeral" and constitutes "vague hopes or possibilities." *Id.* To allow the Debtors in this case to assert, without any support, that it will be able to make full payment to the creditors in this case and retain its interests for continued management, and indeed, be allowed to increase compensation to the owners, with no oversight, would be an "easy evasion of the principle of full or absolute priority." *Id.*

Yet, the Debtors propose to make no payments or contribute any funds to retain their equity in the Debtors. The Debtors' plan is not confirmable as a result under the absolute priority rule.

///
///
///
///
///
///

## **CONCLUSION**

Based on the foregoing, the court should deny confirmation of the Debtors' Joint Plan of Reorganization.

HOMESTREET BANK'S OBJECTION TO THE
CONFIRMATION OF DEBTORS' JOINT PLAN OF
REORGANIZATION - 13

FOSTER GARVEY P.C.
*618 West Riverside Avenue, Ste 300*
*Spokane, Washington 99201*
*(503) 228-3939*

20-00044-WLH11    Doc 384    Filed 10/19/20    Entered 10/19/20 16:32:13    Pg 13 of 15

| | |
|---|---|
| 1 | FOSTER GARVEY P.C. |
| 2 | |
| 3 | By: */s/ Tara J. Schleicher* |
| 4 | Tara J. Schleicher WSBA # 26884<br>Jason M. Ayres, WSBA #39141 |
| 5 | 121 SW Morrison St., 11th Fl<br>Portland, OR 97204 |
| 6 | tara.schleicher@foster.com<br>(503) 228-3939 |

HOMESTREET BANK'S OBJECTION TO THE
CONFIRMATION OF DEBTORS' JOINT PLAN OF
REORGANIZATION - 14

FOSTER GARVEY P.C.
*618 West Riverside Avenue, Ste 300*
*Spokane, Washington 99201*
*(503) 228-3939*

**CERTIFICATE OF SERVICE**

I hereby certify on October 19, 2020, I electronically filed the foregoing HOMESTREET BANK'S OBJECTION TO THE CONFIRMATION OF DEBTORS' JOINT PLAN OF REORGANIZATION with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the persons listed below:

- Jason M Ayres    jason.ayres@foster.com, kesarah.rhine@foster.com
- Roger William Bailey    roger.bailey.attorney@gmail.com, diane.pearson.bblawfirm@gmail.com;brooke.maloney.bblawfirm@gmail.com
- Michelle M Bertolino    , kmuir@fwwlaw.com;bcurrin@fwwlaw.com;jkochubey@fwwlaw.com;mgreen@fwwlaw.com;amckinney@fwwlaw.com
- Donald A Boyd    dboyd@hummerboyd.com, kvoelker@hummerboyd.com
- Joshua J Busey    joshua.busey.attorney@gmail.com, diane.pearson.bblawfirm@gmail.com;brooke.maloney.bblawfirm@gmail.com
- Gary W Dyer    Gary.W.Dyer@usdoj.gov
- Robert Guite    rguite@sheppardmullin.com
- Metiner G Kimel    mkimel@mkimellaw.com, roberta@mkimellaw.com;julie@mkimellaw.com;kimelmr89262@notify.bestcase.com
- Toni Meacham    ToniPierson@RocketMail.Com
- Toni Meacham    ToniPierson@RocketMail.com
- Bruce K Medeiros    bmedeiros@dbm-law.net, sabrahamson@dbm-law.net;cnickerl@dbm-law.net;tnichols@dbm-law.net
- Kevin ORourke    kevin@southwellorourke.com, tina@southwellorourke.com
- Trevor R Pincock    tpincock@lukins.com, mlove@lukins.com
- Steven H Sackmann    steve@sackmannlaw.com, sackmannlaw@hotmail.com
- Tara J. Schleicher    tara.schleicher@foster.com, kesarah.rhine@foster.com
- US Trustee    USTP.REGION18.SP.ECF@usdoj.gov

DATED this 19th day of October, 2020.

FOSTER GARVEY PC

*/s/ Tara J. Schleicher*
Tara J. Schleicher WSBA # 26884

HOMESTREET BANK'S OBJECTION TO THE CONFIRMATION OF DEBTORS' JOINT PLAN OF REORGANIZATION - 15

FOSTER GARVEY P.C.
618 West Riverside Avenue, Ste 300
Spokane, Washington 99201
(503) 228-3939

20-00044-WLH11    Doc 384    Filed 10/19/20    Entered 10/19/20 16:32:13    Pg 15 of 15